IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ANA S. RODRIGUEZ-VALENTIN,

    Plaintiff,

    v.

MICHAEL J. ASTRUE, Commissioner of
the Social Security Administration,

    Defendant.

Civil No. 10-2234 (BJM)

**OPINION AND ORDER**

Plaintiff Ana S. Rodríguez-Valentín ("Rodríguez") filed a complaint seeking judicial review of the decision of the defendant, Michael J. Astrue, Commissioner of Social Security ("Commissioner"), finding that Rodríguez is not entitled to disability benefits under the provisions of the Social Security Act, 42 U.S.C § 423, as amended. (Docket No. 1). Rodríguez asks for judgment to be reversed and an order awarding disability benefits be entered, or in the alternative to remand the case to the Commissioner for further proceedings. Rodríguez filed a memorandum of law in support of her position. (Docket No. 22). The Commissioner answered the complaint (Docket No. 13) and filed a memorandum in support of his decision. (Docket No. 27). This case is before me on consent of the parties. (Docket No. 6, 7). After careful review of the administrative record and the briefs on file, the Commissioner's decision is affirmed.

**LEGAL STANDARD**

The court's review is limited to determining whether the Administrative Law Judge ("ALJ") employed the proper legal standards and focused facts upon the proper quantum of evidence.

**Ana S. Rodríguez-Valentín v. Michael J. Astrue, Commissioner of Social Security**  Page 2
Civil No. 10-2234 (BJM)

Manso-Pizarro v. Secretary of Health and Human Servs., 76 F.3d 15, 16 (1st Cir. 1996). The ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); Ortiz v. Secretary of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991); Da Rosa v. Secretary of Health and Human Servs., 803 F.2d 24, 26 (1st Cir. 1986). The court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodriguez Pagan v. Secretary of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987). Written reports submitted by non-examining physicians who merely reviewed the written medical evidence are not substantial evidence, although these may serve as supplementary evidence for the ALJ to consider in conjunction with the examining physician's reports. Irizarry-Sanchez v. Comm'r of Soc. Sec., 253 F.Supp. 2d 216, 219 (D.P.R. 2003). The burden is on the claimant to prove that she is disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146-147, n.5 (1987). A claimant is disabled under the Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the statute, a claimant is unable to engage in any substantial gainful activity when she "is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."[1] 42

---

[1] The phrase "work which exists in the national economy" means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423 (d)(2)(A).

U.S.C. § 423(d)(2)(A). In determining whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a)(3).

A five-step sequential evaluation process must be applied to every case in making a final determination as to whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Bowen, 482 U.S. at 140-42; Goodermote v. Secretary of Health and Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982). In step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity." If she is, disability benefits are denied. 20 C.F.R. § 404.1520(b). If she is not, the ALJ proceeds to step two, through which it is determined whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. However, if the impairment or combination of impairments is severe, the evaluation proceeds to the third step, in which it is determined whether the claimant has an impairment equivalent to a specific list of impairments contained in the regulations' Appendix 1, which the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d); 20 C.F.R. pt. 404, subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step, through which the ALJ determines whether the impairment prevents the claimant from the work she has performed in the past. If the claimant is able to perform her previous work, she is not disabled. 20 C.F.R. § 404.1520(e). If it is determined that the claimant cannot perform this work, then the fifth and final step of the process calls for a determination of whether the claimant is able to perform other work in the national economy in view of her residual functional capacity ("RFC"), as well as age, education, and work

**Ana S. Rodríguez-Valentín v. Michael J. Astrue, Commissioner of Social Security**     Page 4
Civil No. 10-2234 (BJM)

experience.[2]  If the claimant cannot, then she is entitled to disability benefits. 20 C.F.R. § 404.1520(f).

The claimant has the burden, under steps one through four, of proving that she cannot return to her former employment because of the alleged disability. Santiago v. Sec'y of Health and Human Servs., 944 F.2d 1, 5 (1st Cir. 1991). Once a claimant has demonstrated a severe impairment that prohibits return to her previous employment, the Commissioner has the burden, under step five, to prove the existence of other jobs in the national economy that the claimant can perform. Ortiz v. Sec'y of Health and Human Servs., 890 F.2d 520, 524 (1st Cir. 1989).

**FACTUAL AND PROCEDURAL BACKGROUND**

Rodríguez was born on January 11, 1957. (Transcript ["Tr."] 153, 156, 158, 198, 218). She has an eighth grade education (Tr. 30, 168) and has worked as a manufacturing line inspector, a machine operator, a cashier, and as an assembler before allegedly becoming unable to work. (Tr. 163, 171-172, 182, 187, 499, 508). Rodríguez claims to have been disabled since April 28, 2007 due to a major depressive disorder. (Tr. 14, 153, 156, 158, 162).

Rodríguez received treatment from March 15, 2006 to April 26, 2007 at Lowell General Hospital in Lowell, Massachusetts, for left wrist pain with ganglio cyst, diabetes mellitus (not controlled), high blood pressure, left TMJ crepitus with pain, anemia, and dyslipidemia. X-rays taken of the left wrist were normal. She was treated with pharmacotherapy. (Tr. 167, 228-245).

In Puerto Rico,  Dr. Elsie E. Negrón-Rivera treated the claimant for left wrist inflammation with pharmacotherapy from August 4, 2007 to May 1, 2008. (Tr. 165, 246-249). Rodríguez

---

[2] An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. § 404.1520(e) and 404.1545(a)(1).

received treatment at the Metropolitan Hospital, San Germán, from August 23 to October 2, 2007. (Tr. 166). An x-ray taken on September 28, 2007 revealed that the claimant suffers from cardiomegaly. (Tr. 258). Rodríguez successfully underwent ambulatory surgery for left wrist Dequervain's Syndrome on October 2, 2007. (Tr. 166, 250-253). Dr. Ramón A. Dávila treated her for diabetes, high blood pressure, and anemia with pharmacotherapy from September 14 to October 10, 2007. (Tr. 164-165). Dr. Rossvelt Rijo-Báez treated the claimant for diabetes, high blood pressure, high cholesterol, anemia, and carpal tunnel syndrome with pharmacotherapy from July 1 to October 23, 2008. (Tr. 165, 168, 310-335).

Rodríguez received psychiatric treatment at the *Escuela de Medicina de Ponce, División de Salud Conductual*, Centro de Salud Conductual del Oeste ("CSCO") from July 14, 2007 to January 29, 2008. (Tr. 165-166). Rodríguez's symptoms included anhedonia, depressed mood, lack of energy, crying spells, diminished attention and concentration, and isolation. At CSCO, Dr. Ronald Malavé diagnosed Rodríguez with a major depressive disorder, recurrent and severe, and generalized anxiety disorder. She received pharmacotherapy and psychotherapy. (Tr. 150, 264-265). Rodríguez was then treated there by Dr. Ana Lozada. On October 16, 2007, Dr. Lozada diagnosed Rodríguez with a major depressive disorder, recurrent and severe, with psychotic features and unresolved bereavement. Her symptoms then included auditive hallucinations, retarded motor activity, depressed mood, and diminished concentration. (Tr. 150, 262-263, 266-271). Dr. Lozada reported on November 29, 2007 that the psychotic manifestations were under control, that the claimant was well groomed, cooperative, calm with appropriate affect and normal speech. Rodríguez's thought process was intact and she had no cognitive difficulties. (Tr. 266).

Rodríguez began seeing another psychiatrist, Dr. Jorge Luis Valentín. In an evaluation signed January 12, 2008, Dr. Valentín found that the claimant was depressed, oriented in time and

**Ana S. Rodríguez-Valentín v. Michael J. Astrue, Commissioner of Social Security**   Page 6
Civil No. 10-2234 (BJM)

space, with logical thought process. He found her to have poor attention and concentration, and poor judgment and introspection. Dr. Valentín diagnosed her with major depressive disorder, recurrent and severe, with psychotic features, and treated her with pharmacotherapy and psychotherapy for insomnia, depression, and anxiety. Dr. Valentín treated her until November 10, 2008. (Tr. 150, 165, 272-276).

On October 29, 2008, Rodríguez applied for a period of disability and disability insurance benefits. (Tr. 12, 45, 153-155). She acquired sufficient quarters of coverage to remain insured through December 31, 2012. (Tr. 12, 156-157). The Social Security Administration ("SSA") Field Office prepared a Disability Report on November 5, 2008, and recommended capability development based on the mental condition alleged. (Tr. 158-160). Rodríguez prepared a Disability Report, informing that the following conditions limited her ability to work: major depressive disorder, recurrent, severe, generalized anxiety disorder, personality disorder NOS, diabetes mellitus, hypertension, anemia by Hx, left wrist release, left TMJ crepitus with pain, and dyslipidemia. (Tr. 161-170). Rodríguez claimed that she hears voices, sees shadows, cannot sleep, is always depressed and anxious, suffers from suicidal ideation, is apathetic, has nightmares, and feels like she is being watched and touched. She also claimed to suffer from pain and lack of strength in her hands, headaches, swelling in her legs, and that she can barely walk or spend time in the same position. She alleged that she became unable to work and stopped working on April 28, 2007 because of her conditions. (Tr. 162). Rodríguez also prepared a Function Report on November 24, 2008, in which she reported being angry at life, having no will power or interest in doing things, having suicidal thoughts, wanting to be left alone, only wanting to sleep, hearing voices and laughter, having bad dreams, having body aches, and needing help with personal care and with taking her medicines. (Tr. 189-196, 514-523).

On December 1, 2008, Dr. Valentín submitted to the SSA a mental RFC assessment indicating that Rodríguez was extremely limited in all the items included under the four categories of the Summary Conclusions Section of the form: Understanding and Memory, Sustained Concentration and Persistence, Social Interaction, and Adaptation. He assessed that the claimant has deteriorating major depression with psychotic features, poor response to medications, and a poor prognosis. (Tr. 277-281).

Rodríguez underwent a consultative examination by Dr. Fernando Torres Santiago, internist, on January 9, 2009. Dr. Torres reported that the claimant suffered from arterial hypertension, diabetes mellitus type 2, menopause, anxiety, and a depressive disorder. Although Dr. Torres found Rodríguez to be alert, well oriented, and cooperative, he remarked that she was unable to perform regular work, and that a psychiatric evaluation was recommended. (Tr. 151, 287-298).

On February 19, 2009, the claimant underwent a consultative evaluation with Dr. Alberto Rodríguez, psychiatrist. Dr. Rodríguez informed that the claimant was depressive, with restricted affect, and diminished attention and concentration. Dr. Rodríguez also found that the claimant's thought process was slow, logical, coherent, and relevant, with adequate memory and no disturbances in perception at the time of the interview. (Tr. 151, 301-309).

On March 4, 2009, the case was referred to Dr. Carmen Piñeiro, non-examining psychiatrist, for a mental RFC assessment. (Tr. 337). On March 12, 2009, Dr. Piñeiro assessed in one sentence that the evidence sustained a severe mental condition. No analysis or findings were included in this assessment. (Tr. 336). The case was referred again to Dr. Piñeiro for a re-assessment of the severity of the alleged conditions. (Tr. 339). Dr. Piñeiro replied on March 27, 2009 that the previous assessment remains valid because both the treating sources and the consultative expert described the claimant's condition as severe. (Tr. 338).

On March 31, 2009, the case was referred to Dr. Orlando Reboredo, non-examining psychiatrist, for another mental RFC assessment. (Tr. 360). In a very thorough case analysis, Dr. Reboredo assessed on April 24, 2009 that although the symptoms alleged are credible, the claimant does not appear to be so overwhelmed that she could not perform any work activity because she can learn, understand, remember, or execute at least simple instructions. It was Dr. Reboredo's opinion that Rodríguez can sustain pace and attention, and persist at work activities during a regular workday or workweek, without frequent psychologically-based disturbances or interruptions; that she can perform work activities without special help, supervision, or considerations, and that she can interact with the public, coworkers, and supervisors, and adjust to changes in work routines and environments. (Tr. 340-341, 358).

The Regional Commissioner denied her application initially on April 27, 2009. (Tr. 12, 45, 50-53, 197). A Disability Report on Appeal was prepared on June 5, 2009. Claimant did not report new illnesses, injuries, or conditions acquired since the November 5, 2008 Disability Report that she last filed. (Tr. 201-208). Rodríguez prepared another Function Report on July 7, 2009. In addition to the information that she had previously provided, she added that she was prescribed wrist braces for sleeping and that, besides suicidal ideas, she also had homicidal ideas. (Tr. 209-216). On August 13, 2009, the case was referred to Dr. Luis Umpierre, non-examining psychiatrist, for a mental RFC assessment. (Tr. 380). Dr. Umpierre stated that the analysis of the evidence supported a moderate condition and adopted Dr. Reboredo's mental RFC assessment. (Tr. 379). The Regional Commissioner denied Rodríguez's application upon reconsideration on August 19, 2009. (Tr. 12, 46, 56-58, 217).

Meanwhile, Rodríguez received additional psychiatric treatment at the *Administración de Servicios de Salud Mental y Contra la Adicción* ("ASSMCA") from May 2, 2009 to June 6, 2010.

She was treated there by various psychiatrists. (Tr. 449-470). On May 2, 2009, Rodríguez's affect was found to be stable and appropriate. She was oriented with adequate attention, normal thought contents, disorganized thought process, appropriate behavior and insight, intact judgment, and with a low risk estimate. (Tr. 367-373)

On September 22, 2009, Rodríguez requested a hearing by an ALJ. (Tr. 12, 59-60). The claimant filed a Disability Report on Appeal dated November 24, 2009, claiming that, as of May 28, 2009, her conditions worsened and that she developed asthma. (Tr. 221-227). On June 7, 2010, Dr. Maritza Ortiz (ASSMCA) submitted a mental RFC assessment indicating that Rodríguez was extremely limited in all four of the previously mentioned categories. Dr. Ortiz assessed that the claimant has severe depressive symptoms with psychosis, has had poor response to treatment, and has a poor prognosis. Dr. Ortiz opined that even with treatment her condition has been deteriorating. (Tr. 481-497).

The hearing was held on June 14, 2010. (Tr. 84, 91, 99). A vocation expert ("VE"), Marieva Puig, testified by telephone. (Tr. 12, 29, 99). The ALJ issued a written decision on August 13, 2010, finding that Rodríguez had a major depressive disorder, but was not disabled under Sections 216(i) and 223(d) of the Social Security Act and could return to her past work as a cashier and assembler. (Tr. 6-26). Rodríguez requested review of the ALJ's decision. (Tr. 4). On October 30, 2010, the Appeals Council denied her request. (Tr. 1-3). Rodríguez appealed the ALJ's decision as the Commissioner's final decision.

## DISCUSSION

The analysis in this case centers on the ALJ's determination at step four in the sequential evaluation process contained in 20 CFR § 404.1520. At the fourth step, the Commissioner must make a finding about the claimant's RFC based on all the relevant medical and other evidence in the

case record. 20 C.F.R. §§ 404.1520(e), 416.920(e). The Commissioner must then compare the RFC assessment with the physical and mental demands of past relevant work and determine if the claimant can still do that kind of work. 20 C.F.R. §§ 404.1560(b). If the claimant can do past relevant work, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). The claimant has the initial burden of proving inability to return to past relevant work because of her impairment. Manso-Pizarro, 76 F.3d at 17. On review, this court must determine whether the ALJ's decision at step four was supported by substantial evidence.

Rodríguez claims that the ALJ did not comply with the correct legal standard. Rodríguez specifically claims that the ALJ's finding as to her RFC to perform past relevant work as a cashier and assembler are not supported by the medical evidence or by the VE's testimony. (Docket No. 22; p. 2, 20-24). Rodríguez also claims that the ALJ's finding does not comply with the requirements of the Social Security Ruling ("SSR") 82-62, 1982 SSR LEXIS 27, because the ALJ failed to make a finding of fact as to the physical or mental demands of past relevant work with which to compare her RFC to in order to determine if she can meet such demands. (Docket No. 22; p. 2, 10-20).

SSR 82-62 explains the procedures for determining a disability claimant's capacity to do past relevant work as set forth in the regulations. SSR 82-62, 1982 SSR LEXIS 27 at *1. SSR 82-62 states that, in finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain specific findings of fact as to: (1) the individual's physical and mental RFC, (2) the physical and mental demands of the past job/occupation, and (3) whether the individual's RFC would permit a return to his or her past job or occupation. SSR 82-62, 1982 SSR LEXIS 27 at *10. I examine the ALJ's findings as to each of these matters in turn.

## I.    Physical and Mental RFC

With respect to the first element of SSR 82-62, the ALJ found that Rodríguez had the RFC to perform a full range of work at all exertional levels but with the following non-exertional limitations: she is precluded from engaging in detailed and complex tasks. (Tr. 17). That is, that Rodríguez retained the capacity to engage in unskilled work. Rodríguez does not contest the physical RFC finding, but argues that the ALJ's mental RFC finding is not supported by the medical record. Rodríguez alleges that her non-exertional limitations impede her from returning to past relevant work and have compromised her ability to perform at all exertional levels. (Tr. 20-22).

The ALJ found that Rodríguez has a severe impairment, a major depressive disorder, and has received treatment for her mental condition. (Tr. 14). The ALJ found that the claimant retains the capacity to perform simple, repetitive tasks on a sustained basis. Id. The ALJ also found that the record reveals that the claimant's mental condition has caused more than minimal limitations in her ability to perform basic work activities, but that her symptoms have remained under control with the prescribed treatment, that Rodríguez can learn, understand, remember, and execute simple instructions; sustain pace and attention; persist at work activities during a regular workday or workweek without special help or supervision; adjust to changes in work routines and environments; and interact with the public, coworkers and supervisors. (Tr. 15).

It is the Commissioner's responsibility to determine issues of credibility, draw inferences from the record evidence, and resolve conflicts in the evidence. Ortiz, 955 F.2d at 769 (citation omitted); Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 141 (1st Cir. 1987) (citations omitted). In this case, the ALJ stated that the claimant's self-reported conditions and symptoms, the medical records of treating physicians, and opinion evidence were considered. (Tr.

17). The ALJ gave no credibility to the claimant's statements concerning the intensity, persistence, and limiting effects of the alleged symptoms because they were inconsistent with the RFC assessment. (Tr. 19). The ALJ found that Rodríguez received treatment for her physical conditions, and showed poor compliance with the prescribed treatments and with the physicians' orders. (Tr. 17). The ALJ found that the CSCO record showed that the claimant responded to psychiatric treatment. (Tr. 18). The ALJ also found that the severe limitations reported by Dr. Valentín, treating psychiatrist, were not supported by his clinical findings and that they were inconsistent with the findings of Dr. Torres, consultative internist, who, while interviewing Rodríguez for a physical (not mental) assessment, found her to be alert, well oriented, and cooperative. (Tr. 18). The ALJ also found that the assessment by Dr. Ortiz (ASSMCA) as to the severity of Rodríguez's mental condition was inconsistent with the clinical findings by other treating psychiatrists at ASSMCA. (Tr. 20). The ALJ gave little weight to the assessment prepared by Dr. Rodríguez, consultative psychiatrist, finding that his assessment that Rodríguez was unable to handle funds was inconsistent with some of his own clinical findings. (Tr. 20). It was within the ALJ's discretion to credit the more positive reports of claimant's mental condition. See 20 C.F.R. § 404.1527(d)(2)-(5); Roman-Roman v. Comm'r of Soc. Sec., 114 F. App'x 410, 411-12 (1st Cir. 2004), citing Rodríguez-Pagan, 819 F.2d at 2-3.

On balance, I find that the evidence on record supports the ALJ's mental RFC determination that Rodríguez can perform unskilled work. Unskilled work is that which needs little or no judgment to do simple duties that can be learned on the job in a short period of time, and may or may not require considerable strength. 20 C.F.R. § 404.1568(a). The record shows that the treating and consultative physicians found that Rodríguez was depressed and had poor attention and

concentration, but was oriented, cooperative, with intact thought process, appropriate affect, and with no cognitive difficulties. As to judgment, one treating doctor assessed that she had poor judgment (Tr. 272-276) while another assessed that she had intact judgment (Tr. 367-373), but this discrepancy does not affect the RFC finding as to claimant's capability of performing unskilled work. In short, the ALJ's determination is supported by substantial evidence.

## II.   Physical and Mental Demands of Past Relevant Occupations

Rodríguez next argues that the ALJ failed in making a finding of fact as to the physical or mental demands of the claimant's past relevant work and, therefore, the ALJ's determination that she could perform past relevant work did not comply with SSR 82-62. (Docket No. 22, p. 14-15). SSR 82-62 states that the decision as to whether the claimant retains the functional capacity to perform past work which has current relevance must be developed and explained fully in the disability decision. SSR 82-62, 1982 SSR LEXIS 27 at *6-7. "Information concerning job titles, dates work was performed, rate of compensation, tools and machines used, knowledge required, the extent of supervision and independent judgment required, and a description of tasks and responsibilities will permit a judgment as to the skill level and the current relevance of the individual's work experience. In addition, for a claim involving a mental/emotional impairment, care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g., speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work." SSR 82-62, 1982 SSR LEXIS 27 at *8-9. The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands, and nonexertional demands of such work. SSR 82-62, 1982 SSR LEXIS 27 at *6-7.

**Ana S. Rodríguez-Valentín v. Michael J. Astrue, Commissioner of Social Security**   Page 14
Civil No. 10-2234 (BJM)

Rodríguez argues that the ALJ made no specific findings as to the physical or mental demands of her past relevant work. (Docket No. 22, p. 15). The Commissioner argues that the ALJ's finding is supported by the claimant's description of past work and by the VE's testimony. (Docket No. 27, p. 8).

Rodríguez informed to the SSA that in her job as an assembler, she worked for eight hours a day assembling the motor for ATM machines. She put together and welded ATM machine parts, attached cables and inspected the machines, and packed the ATM motors in plastic and placed them in boxes. In performing her job, she used machines, tools, or equipment; sat and/or stooped for eight hours a day; reached, handled, grabbed, or grasped big and small objects for four hours a day; lifted and carried up to fifty pounds per day; and frequently lifted ten pounds. She did not need technical knowledge or skills, did not supervise people, and was not a lead worker. (Tr. 163-164, 172).

Rodríguez also informed that, as a cashier, she worked for four hours a day, and stood most of the time charging or packing merchandise for customers. She walked around the store distributing or rearranging merchandise left by customers at the register, used machines, tools, or equipment, and prepared reports. She stood and handled large objects for three hours a day. She walked, stooped, or handled small objects for an hour a day, lifted and carried up to fifty pounds per day, and frequently lifted ten pounds. She did not need technical knowledge or skills, did not supervise other people, and was not a lead worker. (Tr. 173-174).

At step four of the sequential evaluation process, a claimant will be found not disabled when she retains the RFC to perform the actual functional demands and job duties of a particular past relevant job. The claimant has the initial burden of showing that she can no longer perform past work because of her impairment. Not only must the claimant lay the foundation as to what activities

her former work entailed, but she must point out how her functional incapacity renders her unable to perform her former usual work. The ALJ may credit a claimant's own description of her former job duties and functional limitations but has some burden to develop the record. Santiago, 944 F.2d at 5-6 (internal quotation marks and citations omitted). With regard to claimant's initial burden, the kind of foundation that the claimant initially must lay requires no more than putting into issue functional loss that precludes performance of pertinent prior work activities. Once this threshold is crossed, the ALJ has the obligation to measure the requirements of former work against the claimant's capabilities. Id., at 6-7. Rodríguez reported that her major depressive disorder and other physical ailments limited her ability to work because she was always depressed and anxious, hears voices, feels like she is being watched and touched, has suicidal ideas, is apathetic to everything, got frequent headaches, and could barely walk or spend much time in the same position. (Tr. 162). I find that, at minimum, Rodríguez put into issue mental functional loss that precludes performance of pertinent prior work activities; the ALJ thus had the obligation to measure the requirements of former work against Rodríguez's mental capabilities.

I further find that the ALJ's analysis of the demands of claimant's prior work is undeveloped under SSR 82-62. In this case, the ALJ stated that Rodríguez's RFC was compared with the physical and mental demands of this work, and found that she is capable of performing past relevant work as a cashier and an assembler. The ALJ stated that these jobs require unskilled mental functions, that these functions are not precluded by the claimant's RFC, and that the VE testified that the claimant retained the capacity to engage in unskilled type of work. (Tr. 20). However, the ALJ's decision lacks discussion of the evidence related to the physical and mental demands of Rodríguez's past relevant work mentioned, and of the reasons that led the ALJ to conclude that

Ana S. Rodríguez-Valentín v. Michael J. Astrue, Commissioner of Social Security                                         Page 16
Civil No. 10-2234 (BJM)

Rodríguez's RFC allowed her to return to past relevant work. See Winfrey v. Chater, 92 F.3d 1017, 1025 (10th Cir. 1996) (holding that "[r]equiring the ALJ to make specific findings on the record at each phase of the step four analysis provides for meaningful judicial review. When, as here, the ALJ makes findings only about the claimant's limitations, and the remainder of the step four assessment takes place in the VE's head, we are left with nothing to review.")

However, although the ALJ failed to make the second finding required by SSR 82-62, the error in this case is harmless. "[A]n ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) (citations omitted). Cause for remand exists when an ALJ's administrative failure to comply with a SSR causes prejudice. Delgado v. Barnhart, 305 F.Supp. 2d 704, 709 (S.D. Tex. 2004) citing Hall v. Schweiker, 660 F.2d 116, 119 (5th Cir. 1981) (per curiam) (reversing and remanding because prejudice resulted from the ALJ's failure to comply with an SSR). The mental RFC limitations found by the ALJ are not inconsistent with performance of Rodríguez's past work as assembler and cashier as described by claimant herself, and are not inconsistent either with the VE's description of the claimant's vocational profile, as discussed below. I find that the ALJ's determination would have been the same even if the decision contained a more detailed finding of facts as to past relevant work, and no prejudice was caused to the claimant because of the ALJ's error. The ALJ's error is therefore harmless, and remanding the case for further elaboration of the second part of the ruling would serve no additional purpose.

**III.    VE's Comparison of RFC with Demands of Past Employment**

Rodríguez also argues that the ALJ's finding as to her RFC to perform past relevant work as a cashier and assembler is not supported by the VE's testimony as to the mental demands of her

past relevant work. (Docket No. 22, p.23). At the hearing, the ALJ first asked the VE to establish the vocational aspects of the jobs that Rodríguez had worked in. The VE testified that the claimant was fifty-three years old at the time the hearing was held, that she was beginning to get old, that she had a limited education, and that her previous jobs have been either mentally unskilled or semi-skilled with a Specific Vocational Preparation ("SVP") of between two and four and mostly of light difficulty (except one that was considered of medium effort). The VE also testified as to the physical and mental demands of Rodríguez's past jobs; that they required that the worker stand and/or walk for prolonged periods of time; that the worker have the ability to grab, pull, lift, and load; and have mental and emotional stability to interact with the public and supervisors, and to focus and concentrate for extended periods of time. The VE testified that this was the claimant's vocational profile. (Tr. 30-31).

The first question posed to the VE was whether a person with the following mental limitations could perform the jobs that Rodríguez has performed: no physical limitations; can learn, understand, remember, or execute at least simple instructions; can sustain pace and attention, and persist at work activities during a regular work day or week without frequent psychologically-based disturbances or interruptions; can perform work activities without special help, supervision, or consideration; can interact with the public, coworkers, and supervisors; and can adjust to changes in work routines and environments. The VE testified that this description fits assembler and teller jobs because these jobs require that the person follow simple instructions. (Tr. 31-32).

The ALJ then asked the VE if a person who cannot complete simple tasks could return to those jobs or another job. The VE testified that such a person would not be able to execute the assembler job nor the teller job nor any job that exists in the national economy because an unskilled job requires that the person can do simple and routine tasks. (Tr. 32-33).

**Ana S. Rodríguez-Valentín v. Michael J. Astrue, Commissioner of Social Security**     Page 18
Civil No. 10-2234 (BJM)

Counsel for the claimant asked the VE if a person with Rodríguez's vocational profile, who can only pay attention and/or concentrate for up to two hours in a normal work day, who can meet the established goals of production for two hours, and who has to take a scheduled break every two hours[3] because of her emotional condition, could perform the jobs mentioned or any other job that exists in the national economy. The VE testified that this person would not be able to perform those jobs. (Tr. 33-34). Counsel then asked if a person who cannot always arrive punctually to work because of her condition, can only accept work-related instructions or criticisms, and can only work in coordination with others for two hours during a normal work day, could do any type of job that exists in the national economy. The VE testified that a person's productivity is affected by punctuality and the ability to follow instructions. (Tr. 35-36). Counsel then asked the VE if claimant, who is in her fifties, with a limited education, who has worked in unskilled or semiskilled jobs, and can only lift ten pounds occasionally and less than ten pounds frequently, could perform the sedentary jobs that she used to perform. The VE answered that she would not be able to do those jobs because they have physical demands. (Tr. 36-37).

A proper hypothetical question is one that "incorporates reasonably all disabilities of the claimant recognized by the ALJ, which "accurately reflects all of [the claimant's] impairments and the degree of their severity." Bowling v. Shalala, 36 F.3d 431 (5th Cir.1994). The ALJ may rely on the VE's testimony to find that the claimant is able to perform past work only so long as the VE's testimony is in response to an accurate hypothetical. Felisky v. Bowen, 35 F.3d 1027, 1036 (6th Cir. 1994). A VE's testimony cannot constitute substantial evidence to support an ALJ's determination as to a claimant's disability status unless it accurately reflects all of the claimant's limitations.

---

[3] It is not clear from the record if counsel asked the VE to consider that the person needed a break every two hours or a two hour break. (Tr. 34).

**Ana S. Rodríguez-Valentín v. Michael J. Astrue, Commissioner of Social Security**  Page 19
Civil No. 10-2234 (BJM)

Cooper v. Sullivan, 880 F.2d 1152, 1158 (9th Cir.1989); Varney v. of Sec'y Health and Human Services, 846 F.2d 581, 585 (9th Cir. 1988). However, it is well within an ALJ's authority to weigh the evidence, to determine the credibility of the plaintiff's subjective complaints, and to use only credible evidence in posing a hypothetical question to a vocational expert. See Arocho v. Sec'y of Health and Human Services, 670 F.2d 374, 375 (1st Cir. 1982) (ALJ must decide what testimony will be credited when forming the hypothetical questions).

Having already found that the medical evidence supports the ALJ's RFC determination, I find that the questions posed by the ALJ to the VE accurately reflect Rodríguez's impairments and degree of severity. Also, the VE considered Rodríguez's physical and mental demands of past relevant work when testifying that she could perform unskilled work. I therefore conclude that the VE's testimony provides substantial support for the ALJ's conclusion that the claimant can perform her previous jobs.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is affirmed. Judgment shall be entered accordingly.

**IT IS SO ORDERED**.

At San Juan, Puerto Rico, on this 29th day of June, 2012.

*s/Bruce J. McGiverin*
BRUCE J. McGIVERIN
United States Magistrate Judge